# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| RED STROKES ENTERTAINMENT, INC. | ) | Case No. 3:12-cv-00008 |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LISA A. SANDERSON, | ) | |
| | ) | |
| *Defendant.* | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Defendant Lisa Sanderson ("Sanderson") submits this Memorandum of Law in support of her Motion for Summary Judgment against Plaintiff Red Strokes Entertainment, Inc. ("Red Strokes"), pursuant to Fed. R. Civ. P. 56, Local Rule 56.01 and the Initial Case Management Order filed on November 28, 2012.

# **TABLE OF CONTENTS**

I.  INTRODUCTION/SUMMARY OF ARGUMENT ..................................  1

II.  FACTUAL AND PROCEDURAL BACKGROUND ...............................  3

III.  STANDARD ON SUMMARY JUDGMENT ............................................  7

IV.  RED STROKES' CLAIM FOR DEFAULT ON ALLEGED
LOANS AND PAYMENTS FAILS AS A MATTER OF LAW .................  9

    A.  The Alleged Loan Is Governed By California Law. ...........................  9

    B.  Red Strokes' Claim for Default on the Alleged Legal Fee Loan is
Barred by the Statute of Limitations. ...............................................  11

    C.  The Terms of Both of the Alleged Loans Are Too Vague to Be
Enforced. .......................................................................................  14

V.  THE COURT SHOULD ABSTAIN FROM RULING ON
RED STROKES' CLAIM FOR DECLARATORY RELIEF ....................  17

VI.  CONCLUSION .........................................................................................  20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abeita v. TransAmerica Mailings, Inc.*
159 F.3d 246 (6th Cir.1998) ........................................................... 8

*Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*
139 F3d 419 (4th Cir. 1998) ........................................................... 19

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) ..................................................................... 8

*Brillhart v. Excess Ins. Co. of America*
316 U.S. 491 (1942) ..................................................................... 17

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986) ..................................................................... 7

*Chase Manhattan Bank, N.A. v. CVE, Inc.*
206 F.Supp.2d 900 (M.D. Tenn. 2002) ........................................... 10

*Daum v. Planit Solutions, Inc.*
619 F.Supp.2d 652 (D. Minn. 2009) ............................................... 18

*Electric Power Bd. of Chattanooga v. Monsanto Co.*
879 F.2d 1368 (6th Cir. 1989) ....................................................... 9

*Emmons v. McLaughlin*
874 F.2d 351 (6th Cir.1989) ....................................................... 7, 8

*Erie R.R. v. Tompkins*
304 U.S. 64 (1938) ....................................................................... 9

*Huth v. Hartford Ins. Co. of the Midwest*
298 F.3d 800 (9th Cir. 2002) ......................................................... 19

*Jandro v. Ohio Edison Co.*
167 F.3d 309 (6th Cir. 1999) ......................................................... 9

*KW Bancshares, Inc. v. Syndicates of Underwriters*
    965 F.Supp. 1047 (W.D. Tenn. 1997) ........................................... 9

*Mackey v. Judy's Foods, Inc.*
    867 F.2d 325 (6th Cir. 1989) ............................................... 9, 10

*Mitcheson v. Harris*
    955 F.2d 235 (4th Cir. 1992) .................................................. 17

*Roark v. South Iron R-1 School District*
    573 F.3d 556 (8th Cir. 2009) ............................................... 18

*Smith v. Metropolitan Property & Liab. Ins. Co.*
    629 F.2d 757 (2nd Cir. 1980) .............................................. 18

*Southeast Mental Health Center, Inc. v. Pacific Ins. Co., Ltd.*
    439 F.Supp.2d 831 (W.D. Tenn. 2006) ....................................... 8

*Spence v. Miles Laboratories, Inc.*
    37 F.3d 1185 (6th Cir. 1994) ................................................. 9

*United States v. City of Las Cruces*
    289 F.3d 1170 (10th Cir. 2002) ........................................... 18

*Whitfield v. City of Knoxville*
    756 F.2d 455 (6th Cir. 1985) ................................................ 10

*Wilton v. Seven Falls Co.*
    515 U.S. 277 (1995) ..................................................... 17, 18

## STATE CASES

*Allstate Ins. Co. v. Mahan*
    223 Tenn. 496 (1969) ....................................................... 17

*Balderacchi v. Ruth*
    36 Tenn.App. 421 (1953) .................................................... 14

*Banner Entertainment, Inc. v. Superior Court*
    62 Cal.App.4th 348 (1998) .................................................. 15

*Batson v. Pleasant View Utility Dist.*
    592 S.W.2d 578 (Tenn.App.1979) ............................................................ 14

*Buffington v. Ohmert*
    253 Cal.App.2d 254 (1967) .......................................................... 12, 13

*In re Galvin's Estate*
    51 Cal. 215 (1876) .................................................................................. 11

*Jamestowne on Signal, Inc. v. First Federal Sav. & Loan Ass'n*
    807 S.W.2d 559 (Tenn. Ct. App. 1990)...................................................... 16

*Johnson v. Central National Ins. Co. of Omaha, Neb.*
    210 Tenn. 24 (1962) ............................................................................... 14

*Kessinger v. Organic Fertilizers, Inc.*
    151 Cal.App.2d 741 (1957) ..................................................................... 15

*Leonard v. Gallagher*
    235 Cal.App.2d 362 (1965) ..................................................................... 12

*McDaniel v. Mulvihill*
    196 Tenn. 41 (1953) ............................................................................... 10

*O'Brien v. Biles*
    1 Tenn. App. 595 (1925) ......................................................................... 11

*Price v. Mercury Supply Co., Inc.*
    682 S.W.2d 924 (Tenn.App.1984) ........................................................... 14

*Vantage Technology, LLC v. Cross*
    17 S.W.3d 637 (Tenn. Ct. App. 1999).......................................................... 9

*Weddington Productions, Inc. v. Flick*
    60 Cal.App.4th 793 (1998) ..................................................................... 15

Case 3:12-cv-00008   Document 42-1   Filed 07/31/13   Page 5 of 27 PageID #: 286

## FEDERAL STATUTES

28 U.S.C. § 1332 ................................................................... 9

28 U.S.C. § 2201 ................................................................. 17

Federal Rules of Civil Procedure 56 ................................... 7, 8

## STATE STATUTES

California Civil Code § 1717.5 ............................................. 20

California Code of Civil Procedure § 337 ............................ 13

California Code of Civil Procedure § 339 ....................... 11, 13

California Labor Code § 201 ................................................. 7

T.C.A. § 23-1101 ................................................................ 17

T.C.A. § 28-1-112 ...................................................... 10, 11, 16

## OTHER AUTHORITIES

Witkin, Cal. Proc., Actions § 496 (4th Ed. 1996) ................. 12

# I. INTRODUCTION/SUMMARY OF ARGUMENT

For eighteen (18) years, Sanderson loyally served as the Chief Executive Officer and Producing Partner for Red Strokes, a company founded by country music star Garth Brooks ("Brooks") to develop and produce motion picture and television projects. During that time Sanderson and Brooks developed a close personal friendship. So close, in fact, that when Sanderson became embroiled in a personal and emotionally painful legal dispute in 2005, Brooks generously offered to pay Sanderson's legal fees to ensure that she would have the best legal representation money could buy. Brooks repeatedly reassured Sanderson that the payment of her legal fees was a gift and that she would never have to repay those monies.

Several years later, however, after Sanderson's employment with Red Strokes ended, Red Strokes manufactured a claim that the payment of Sanderson's legal fees was a loan in the principal sum of $223,738.21. Red Strokes now claims that Sanderson has defaulted on that alleged loan.

In addition, Red Strokes claims that monies that were allegedly paid to agencies in the State of California to satisfy tax liens against Sanderson several months after Sanderson's employment ended also constituted a loan, notwithstanding the fact that Sanderson never requested or authorized Red Strokes to pay any tax liens on her behalf.

Based on the foregoing, Red Strokes filed this action asserting a claim against Sanderson for alleged "Default on Loans and Payments." As discussed herein, Red Strokes' claim that the money paid for Sanderson's attorneys fees was a loan has long been barred by the statute of limitations. Furthermore, there is no evidence whatsoever supporting the existence of any enforceable agreement between Sanderson and Red Strokes concerning a loan for legal fees or for payment of Sanderson's tax liens.

Red Strokes has also asserted a vague and ambiguous claim for declaratory judgment in which it is asking the Court to declare that "no contract exists between Plaintiff and Defendant, and that Plaintiff owes Defendant no fee, credit, or payment of any kind."[1] Red Strokes has recently admitted, however, that its declaratory relief claim is the subject of a parallel proceeding currently pending in the Los Angeles County, California Superior Court in which Sanderson has alleged, among other claims, a claim against Red Strokes and Brooks for breach of contract. Under the circumstances, the Court should abstain from exercising jurisdiction over Red Strokes' declaratory relief claim.

---

[1] Red Strokes' allegations in this regard beg the question, if no contract exists between Sanderson and Red Strokes, would that not also include an alleged contract obligating Sanderson to repay the alleged loans?

For each of the foregoing reasons, Sanderson requests that her Motion be granted in its entirety and that summary judgment be awarded in her favor against Red Strokes.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Red Strokes was an entertainment production company owned by Brooks that developed and produced film and television projects.[2] From approximately 1993 through part of 2011, Sanderson was employed as the Chief Executive Officer and Producing Partner at Red Strokes.  UF No. 3.  During the approximately 18 years that Sanderson worked for Red Strokes, Sanderson and Brooks developed an extremely close personal friendship.  UF No. 5.

From approximately 2005 to 2007, Sanderson was involved in litigation concerning a highly personal, private and confidential matter in the Los Angeles County, California Superior Court.  UF No. 6.  Due to the sensitive and private nature of the matter, the court records have been sealed.  Sanderson and Brooks regularly confided in one another, including regarding the legal matter in which Sanderson was involved.  UF No. 7.  Brooks expressed to Sanderson that he wanted to ensure that she had the best possible legal representation and told her that he would pay the legal fees incurred in that matter as a gift to her.  UF No. 8.

---

[2]     See Sanderson's Statement of Undisputed Material Facts ("UF"), Nos. 1-2.

Sanderson accepted Brooks' offer to take care of her legal fees. UF No. 9. From approximately November 2005 through January 2007, Brooks arranged for Red Strokes to pay Sanderson's legal fees directly to Sanderson's attorneys, who were located in Los Angeles, California. UF No. 10. As of 2007, the legal matter was resolved. UF No. 11. From the time Brooks informed Sanderson that he/Red Strokes would pay Sanderson's legal fees, those fees were paid by Red Strokes, with Brooks' authorization and approval, directly to Sanderson's attorneys in Los Angeles, California. UF No. 10.

At no time did Brooks or anyone else ever state that Sanderson would be expected to repay Red Strokes or Brooks personally for the legal fees that were paid on Sanderson's behalf. UF No. 12. To the contrary, Brooks repeatedly told Sanderson "never to think about paying [him] back, it was taken care of and that's how we do things for each other." UF No. 13. Brooks also reminded Sanderson that she had created a number of lucrative business opportunities for him, for which she was never compensated and indicated that the least he could do to repay Sanderson was to take care of her legal fees. Sanderson Decl., ¶ 9.

Several years after the fact, Red Strokes is now claiming that the legal fees that were paid on Sanderson's behalf was a loan (hereinafter the "Legal Fee Loan") that Sanderson is now expected to repay, despite Brooks' repeated assurances that the payment of Sanderson's legal fees was a gift. Red Strokes' claim that the

payment of Sanderson's legal fees was a loan is absolutely false. UF No. 14.
There is no written agreement between Sanderson and Red Strokes documenting
the terms of the alleged Legal Fee Loan. UF No. 11. Prior to filing this lawsuit,
neither Brooks nor Red Strokes ever demanded that Sanderson repay Red Strokes
for the Legal Fee Loan. Neither Brooks nor anyone else on behalf of Red Strokes
has ever discussed any repayment terms with Sanderson, including when the
alleged Legal Fee Loan would be due or whether any interest would be charged in
connection with the alleged Legal Fee Loan. UF Nos. 20-22. Notwithstanding the
fact that there is no due date on the alleged Legal Fee Loan, and there has been no
demand for repayment of the alleged Legal Fee Loan, Red Strokes claims that
Sanderson has defaulted on the loan.

Sanderson's employment with Red Strokes officially ended in December
2010, and Sanderson was paid a severance through April 30, 3011. UF Nos. 24-
25. Red Strokes has alleged that it received earnings withholding orders
concerning Sanderson from the California Franchise Tax Board and California
Employment Development Department in May 2011 and August 2011, totaling
$2,399.61. UF Nos. 26-27. Although Sanderson was no longer employed by or
receiving a paycheck from Red Strokes, Red Strokes claims that it paid those
agencies the sum of $2,399.61 to satisfy tax liens that were claimed. Red Strokes
further claims that this payment constituted a loan to Sanderson (hereinafter the

"Tax Loan". This claim is absolutely false. UF Nos. 28-30. Sanderson never authorized or requested, either verbally or in writing, that Red Strokes pay any monies on her behalf in connection with alleged tax liens. Sanderson was unaware that Red Strokes paid any tax liens on her behalf or that Red Strokes claimed that said payment was a loan until after this lawsuit was filed. *Id.*

Furthermore, prior to filing this lawsuit, neither Brooks nor Red Strokes ever demanded that Sanderson repay Red Strokes for its payment the $2,399.61 to satisfy alleged tax liens. UF No. 32. Neither Brooks nor anyone else on behalf of Red Strokes has ever discussed any repayment terms with Sanderson, including when the alleged Tax Loan would be due or whether any interest would be charged in connection with the alleged Tax Loan. UF Nos. 33-35.

Red Strokes filed this action on November 16, 2011, and it was subsequently removed to this Court on diversity grounds. UF No. 18. In addition to Red Strokes' first claim for default on alleged loans and payments, Red Strokes is also seeking a declaratory judgment that "no contract exists between Plaintiff and Defendant, and that Plaintiff owes Defendant no fee, credit, or payment of any kind." UF No. 37. In interrogatory responses recently served by Red Strokes, Red Strokes states that its declaratory relief claim is the subject of a parallel state court proceeding currently pending in California entitled *Lisa A. Sanderson v. Garth Brooks and Red Strokes Entertainment, Inc*, Los Angeles County California

Superior Court Case No. BC505548. UF No. UF No. 38. In that action, Sanderson has asserted claims against Brooks and Red Strokes for violation of California Labor Code section 201, breach of oral agreement, breach of the implied covenant of good faith and fair dealing and fraud. *Id.*

## III. STANDARD ON SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party does not have any burden to negate or disprove matters on which the opponent will have the burden of proof at trial and the moving party need not produce any evidence at all on such matters. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553-54 (noting that where the moving party does not have the burden of proof at trial on a dispositive issue, the moving party may meet its burden for summary adjudication by showing an "absence of evidence" to support the non-moving party's claim). So long as the movant has met its initial burden of "demonstrat [ing] the absence of a genuine issue of material fact," *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. *Emmons v.*

*McLaughlin*, 874 F.2d 351, 353 (6th Cir.1989).

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); see also *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 250 (6th Cir.1998). A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52, 106 S.Ct. 2505; *Southeast Mental Health Center, Inc. v. Pacific Ins. Co., Ltd.*, 439 F.Supp.2d 831 (W.D. Tenn. 2006).

For the reasons stated herein, there is no triable issue of material fact with respect to any of the arguments made herein. Red Strokes' claim for the alleged Legal Fee Loan is barred by the statute of limitations. Nor is there any enforceable agreement between Sanderson and Red Strokes obligating her to repay the alleged Legal Fee Loan or the alleged Tax Loan. As for Red Strokes' declaratory relief claim, it is undisputed that claim is the subject of a parallel state court proceeding pending in California involving the same parties. Accordingly, the Court should abstain from hearing the declaratory relief claim.

## IV. RED STROKES' CLAIM FOR DEFAULT ON ALLEGED LOANS AND PAYMENTS FAILS AS A MATTER OF LAW.

### A. The Alleged Loan Is Governed By California Law

In cases in which diversity jurisdiction exists under 28 U.S.C. section 1332, federal courts in Tennessee must follow the substantive law of the forum state, which in this case includes applying Tennessee's choice of law rules. *Erie R.R. v. Tompkins*, 304 U.S. 64, 82 L. Ed. 1188, 58 S. Ct. 817 (1938); *Jandro v. Ohio Edison Co.*, 167 F.3d 309, 313 (6th Cir. 1999); *Spence v. Miles Laboratories, Inc.*, 37 F.3d 1185, 1188 (6th Cir. 1994); *Electric Power Bd. of Chattanooga v. Monsanto Co.*, 879 F.2d 1368, 1375 (6th Cir. 1989).

It is undisputed that there is no written agreement between Sanderson and Red Strokes concerning the alleged Legal Fee Loan. UF No. 16. Where an alleged agreement does not contain choice of law provisions, Tennessee follows the rule of *lex loci contractus*. *Mackey v. Judy's Foods, Inc.*, 867 F.2d 325, 328 (6th Cir. 1989); *KW Bancshares, Inc. v. Syndicates of Underwriters*, 965 F.Supp. 1047, 1051 (W.D. Tenn. 1997); *Vantage Technology, LLC v. Cross*, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999).

Under the doctrine of *lex loci contractus*, absent a contrary intent expressed by the parties, under Tennessee law contracts are to be governed by the substantive law of the jurisdiction in which they were executed. *Id.* Thus, under Tennessee

law, unless the parties have agreed otherwise, the construction and validity of a contract are governed by the law of the state in which the contract was consummated. *Chase Manhattan Bank, N.A. v. CVE, Inc.*, 206 F.Supp.2d 900, 905 (M.D. Tenn. 2002). In the present case it is undisputed that there was no intent expressed by the parties concerning what law would govern the alleged Legal Fee Loan. UF Nos. 16, 20-22. It is also undisputed that all monies paid pursuant to the alleged Legal Fee Loan were paid directly to Sanderson's attorneys in Los Angeles, California. UF Nos. 10, 15. Because the alleged Legal Fee Loan was executed in California it is governed by California law. *Chase Manhattan Bank*, 206 F.Supp.2d at 905.

Furthermore, even if the alleged Legal Fee Loan had been executed in Tennessee, which Sanderson disputes, California's statutes of limitation would nevertheless apply. While federal courts apply the substantive law of the state where the contract was executed, federal courts also apply the statute of limitations of the forum as a "procedural" measure unless the action is one encompassed by Tennessee's borrowing statute, T.C.A. section 28-1-112. *Mackey v. Judy's Foods, Inc.*, 654 F. Supp. 1465, 1469; *Whitfield v. City of Knoxville*, 756 F.2d 455 461-462 (6th Cir. 1985); *McDaniel v. Mulvihill*, 196 Tenn. 41, 263 S.W.2d 759 (1953).

T.C.A. section 28-1-112 "borrows" another state's statute of limitations to bar actions that accrue while the "party to be charged" is a resident in the foreign

state. T.C.A. § 28-1-112 states: "[w]here the statute of limitations of another state or government has created a bar to an action upon a cause accruing therein, while the party to be charged was a resident in such state or such government, the bar is equally effectual in this state."

In order to apply a statute of limitations from a foreign state, the maker must have resided in the foreign state for the full statutory period. *O'Brien v. Biles*, 1 Tenn. App. 595 (1925). In this case, Sanderson has resided in the State of California for the entire statutory period of the alleged Legal Fee Loan. UF No. 4. Therefore, under Tennessee's borrowing statute, the Court should apply the applicable statute of limitations under California law to Red Strokes' claim for breach of an alleged loan agreement.

B.    <u>Red Strokes' Claim for Default on the Alleged Legal Fee Loan is Barred by the Statute of Limitations.</u>

It is undisputed that there is no written agreement between Sanderson and Red Strokes regarding the alleged Legal Fee Loan. UF No. 16. Under California law, the statute of limitations on a claim for breach of an oral agreement is two years. Cal. Code Civ. Proc. § 339. Likewise, the law is well established in California that the statute of limitations commences to run on an oral loan from the ***time of the loan*** and for a period of two years thereafter. *In re Galvin's Estate*, 51 Cal. 215, 217 (1876).

Where the obligation is simply to pay money on demand, no "reasonable" or other time is added to the limitation. The "demand" is not viewed as a condition but merely as an indication of the immediate maturity of the debt. Hence, the statute begins to run at the inception of the agreement, when the obligation was incurred. (Tilden Lumber Co. v. Perino (1934) 2 Cal.App.2d 133, 134, 37 P.2d 466; Carrasco v. Greco Accounting Co. (1943) 58 Cal.App.2d 673, 675, 137 P.2d 463.)

Witkin, Cal. Proc., Actions § 496 (4th Ed. 1996).

In *Buffington v. Ohmert*, 253 Cal.App.2d 254 (1967), the court confirmed that for purposes of statute of limitations on an oral loan payable on demand, the statute of limitations begins to run from the inception of the loan, noting the following:

[I]t could reasonably be concluded that the loans were payable on demand or within a reasonable time if no demand was made. ***For the purposes of the statute of limitations, loans payable on demand are deemed payable at their inception, and the statute begins to run from such time.*** [Citations] The evidence clearly supports the conclusion that, prior to the suit more than two years had elapsed since the last of the loans became payable.

*Id.* at 361 (emphasis added).

Indeed, even if there was a written promissory note that was "payable on demand," the statute of limitations begins to run from the date of the actual note. There is no additional time added for the plaintiff to make a demand and the demand must be made within four years on a written promissory note payable on demand from the date of the actual agreement. *Leonard v. Gallagher*, 235 Cal.App.2d 362, 45 Cal.Rptr. 211 (1965).

In this case, it is undisputed that Red Strokes' last payment pursuant to the alleged Legal Fee Loan was made in January 2007. UF No. 15. Therefore, the statute of limitations began running in January 2007, and thus expired in January 2009. Cal. Code Civ. Proc. § 339; *Buffington*, 253 Cal.App.2d at 361. Since this lawsuit was not filed until November 16, 2011, Red Strokes' claim for default is barred as to the alleged Legal Fee Loan. UF Nos. 17-19.

Even if Red Strokes had some writing in its bookkeeping records purporting to evidence the alleged Legal Fee Loan, Red Strokes' claim would still be barred. Pursuant to California Code of Civil Procedure section 337, the statute of limitations on a book account[3] or account stated is four years. The statute of limitations on either a book account or an account stated begins to run from the date of the last item stated in the account. Cal. Code Civ. Proc. § 337(2). Therefore, since Red Strokes' last payment to Sanderson's attorneys was made in January 2007, the statute would have been to run as of that date and would have

_____

[3]    "The term 'book account' means a detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor arising out of a contract or some fiduciary relation, and shows the debits and credits in connection therewith, and against whom and in favor of whom entries are made, is entered in the regular course of business as conducted by such creditor or fiduciary, and is kept in a reasonably permanent form and manner and is (1) in a bound book, or (2) on a sheet or sheets fastened in a book or to backing but detachable therefrom, or (3) on a card or cards of a permanent character, or is kept in any other reasonably permanent form and manner."

Cal. Code Civ. Proc., § 337a

expired in January 2011, eight months before Red Strokes' Complaint was filed. UF Nos. 17-19.

**C.  <u>The Terms of Both of the Alleged Loans Are Too Vague to Be Enforced.</u>**

Whether a contract is express, implied, written, or oral, under Tennessee law, in order to be enforceable the contract must, among other elements, result from a meeting of the minds and must be sufficiently definite to be enforced. *Johnson v. Central National Ins. Co. of Omaha, Neb.,* 210 Tenn. 24, 356 S.W.2d 277, 281 (1962); *Price v. Mercury Supply Co., Inc.,* 682 S.W.2d 924 (Tenn.App.1984). The contemplated mutual assent and meeting of the minds necessary to form a contract cannot be accomplished by the unilateral action of one party, nor can it be accomplished by an ambiguous course of dealing between the two parties from which differing inferences regarding terms of the alleged contract could be drawn. *Batson v. Pleasant View Utility Dist.,* 592 S.W.2d 578, 582 (Tenn.App.1979); *Balderacchi v. Ruth,* 36 Tenn.App. 421, 256 S.W.2d 390, (1953).

The law is no different in California:

> In order for acceptance of a proposal to result in the formation of a contract, the proposal "must be sufficiently definite, or must call for such definite terms in the acceptance, that the performance promised is reasonably certain." A proposal "cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain . . . . The terms of a contract are reasonably certain if they provide a basis

for determining the existence of a breach and for giving an appropriate remedy." If, by contrast, a supposed "contract" does not provide a basis for determining what obligations the parties have agreed to, and hence does not make possible a determination of whether those agreed obligations have been breached, there is no contract.

*Weddington Productions, Inc. v. Flick*, 60 Cal.App.4th 793, 811, 71 Cal.Rptr.2d 265 (1998) (internal citations omitted); *see also Banner Entertainment, Inc. v. Superior Court*, 62 Cal.App.4th 348, 359, 72 Cal.Rptr.2d 598 (1998) ("It is essential to the existence of every contract that there should be a reciprocal assent to a definite proposition . . . . Thus, the failure to reach a meeting of the minds on material points prevents the formation of a contract even though the parties have orally agreed upon some of the terms, or have taken some action related to the contract."), quoting *Kessinger v. Organic Fertilizers, Inc*, 151 Cal.App.2d 741, 750, 312 P.2d 345 (1957).

In this case, with respect to both the alleged Legal Fee Loan and the alleged Tax Loan, there is no evidence whatsoever supporting that there was ever any meeting of the minds between Sanderson and Red Strokes resulting in any loan agreement with respect to either Red Strokes' payment of Sanderson's legal fees or the payment of Sanderson's tax liens. There are no written agreements between the parties, nor was there ever any discussion or agreement concerning any repayment terms such as when the alleged loans were due or whether any interest was to be charged and if so, what the interest rate would be. UF Nos. 16, 20-22,

33-35.  Indeed, with respect to the $2,399.61 that Red Strokes claims was paid on Sanderson's behalf to satisfy tax liens, Sanderson never authorized or agreed that Red Strokes could make the payment on her behalf and was not even aware that Red Strokes had done so until this lawsuit was filed. UF Nos. 28-30. Based on the foregoing, there is no enforceable agreement between Sanderson and Red Strokes obligating her to repay either the alleged Legal Fee Loan or the alleged Tax Loan.

The Court's analysis in *Jamestowne on Signal, Inc. v. First Federal Sav. & Loan Ass'n*, 807 S.W.2d 559 (Tenn. Ct. App. 1990), is instructive:

> The problem with the agreement between Plaintiffs and First Federal stems not from what was agreed upon but from the lack of showing of any agreement which contains the essential ingredients to form an enforceable contract. The agreement was intended to cover the loaning of a substantial amount of additional money. However, there is no showing of any of the essential elements of such a loan, such as  the amount to be loaned, the duration of the loan, how it was to be repaid, the rate of interest to be paid and when, what security, if any, was to be given.
>
> We have been cited to no reported cases in this jurisdiction specifically addressing this issue, but in other jurisdictions it is uniformly held that for an agreement to loan money to be enforceable it must contain such essential elements as the amount of money to be loaned, the duration of the loan, the rate of interest, the method of payment, and collateral securing the loan. [Citations omitted].

*Jamestowne*, 807 S.W.2d at 565.  Based on the foregoing, the court in Jamestowne found that there was no enforceable loan agreement between the parties.*Id.*

Like the alleged loan in *Jamestowne*, there is no evidence establishing the essential terms supporting the existence of any agreement between Red Strokes

and Sanderson concerning the alleged Legal Feel Loan and the alleged Tax Loan, such as "the duration of the loan, the rate of interest, the method of payment, and collateral securing the loan." *Id.*;   UF Nos. 16, 20-22, 33-35.  Consequently, the Court should find that there is no enforceable loan agreement between Red Strokes and Sanderson.

## V.   <u>THE COURT SHOULD ABSTAIN FROM RULING ON RED STROKES' CLAIM FOR DECLARATORY RELIEF.</u>

The Declaratory Judgment Act (28 U.S.C § 2201) provides that the Court may declare certain rights of the parties; however, only an authorization, not a command to do so. *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494, 62 S.Ct. 1173, 1175 (1942); *Mitcheson v. Harris*, 955 F.2d 235, 237 (4th Cir. 1992). Similarly, the granting of declaratory relief is also discretionary under Tennessee law. *Allstate Ins. Co. v. Mahan*, 223 Tenn. 496, 448 S.W.2d 392 (1969) (under T.C.A. § 23–1101 *et seq.*, it is within trial judge's discretion to entertain or refuse to entertain declaratory judgment action).

The exercise of declaratory relief jurisdiction by federal courts is neither automatic nor obligatory: "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288, 115 S.Ct. 2137, 2143 (1995) (emphasis

added).  Furthermore, the Court may abstain from hearing a declaratory relief claim, even though there is an independent basis for the Court's jurisdiction, i.e., diversity jurisdiction. *United States v. City of Las Cruces*, 289 F.3d 1170, 1181 (10th Cir. 2002).

Unlike general abstention principles, no showing of "exceptional circumstances" is required to support the Court's decision to abstain from hearing a declaratory relief action. *Wilton*, 515 U.S. at 286- 289, 115 S.Ct. at 2142-2144. Indeed, courts should exercise their discretion to dismiss suits for declaratory relief that simply seek to establish a party's right to damages for breach of contract. *Daum v. Planit Solutions, Inc.*, 619 F.Supp.2d 652, 657 (D. Minn. 2009).

In this case, Red Strokes has admitted that its declaratory relief claim is the subject of Sanderson's breach of contract claim against Red Strokes and Brooks in the parallel action currently pending in the Los Angeles County, California Superior Court.  UF No. 38.  There is no reason why this Court should expend its resources determining the parties respective rights and duties under Sanderson's employment agreement with Red Strokes when those very same rights and duties will be adjudicated by the California court. *Smith v. Metropolitan Property & Liab. Ins. Co.*, 629 F.2d 757, 759 (2nd Cir. 1980); *see also Roark v. South Iron R-1 School District*, 573 F.3d 556, 559 (8th Cir. 2009).  Nor would there be any prejudice to Red Strokes if the California determines the parties' respective rights

and duties under Sanderson's employment contract.

Furthermore, the fact that this action was filed before the parallel proceeding between the parties that is pending in California is irrelevant. Even if there is no parallel state action pending, the Court may still exercise its discretion to abstain from exercising jurisdiction over claims that are more properly determined by a state court. *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 802-803 (9th Cir. 2002); *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F3d 419, 423 (4th Cir. 1998) ("the existence or nonexistence of a state court action is simply one consideration relevant to whether to grant declaratory relief.").

Based on the foregoing, Sanderson respectfully submits that the Court should exercise its discretion to refrain from exercising jurisdiction over Red Stroke's claim for declaratory judgment.

///

///

///

///

///

///

///

///

## VI. **CONCLUSION**

For the foregoing reasons, Sanderson respectfully requests that summary
judgment be granted in her favor and that she be awarded reasonable attorneys'
fees pursuant to California Civil Code section 1717.5.

July 31, 2013

Respectfully submitted,

LAVELY & SINGER
PROFESSIONAL CORPORATION

By: _/s/ Allison S. Hart_____
Allison S. Hart, Esq.
2049 Century Park East, Suite 2400
Los Angeles, CA 90067
Tel.: 310-556-3501
Fax: 310-556-3615
ahart@lavelysinger.com
*Counsel for Defendant*
*Lisa A. Sanderson*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, via the Court's

Electronic Filing System, upon the following counsel of record:

William T. Ramsey, Esq.                    Jennifer S. Ghanem, Esq.
John E. Haubenreich, Esq.                  Keller Turner Ruth Andrews Ghanem
Neal & Harwell, PLC                            & Heller, PLLC
150 Fourth Avenue North                    700 12th Avenue South, Suite 302
Suite 2000                                 Nashville, TN 37203
Nashville, TN 37219

This the 31st day of July, 2013.


                                           ____/s/ Jennifer Valentine_____
                                           JENNIFER VALENTINE